**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

|  |  |  |
|---|---|---|
| DEANNA B.,[1] | : | Case No. 1:25-cv-00473 |
|  | : |  |
| Plaintiff, | : | District Judge Douglas R. Cole |
|  | : | Magistrate Judge Caroline H. Gentry |
| vs. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are before this Court for the second time. Plaintiff appeals Defendant's finding that she was not under a "disability" as defined in the Social Security Act. Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since April 10, 2019. At that time, she was forty-eight years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff subsequently turned age fifty and changed her age category to a "person closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No.  7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-14 at PageID 1418-48), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.   FACTS

### A.   The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:    Plaintiff has not engaged in substantial gainful activity since April 10, 2019, the alleged onset date.

Step 2:    She has the severe impairments of osteoarthritis in the knee status-post arthroplasty, lumbosacral spondylosis, obesity, major depressive disorder, and posttraumatic stress disorder (PTSD).

Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she can do despite her impairments, see *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can climb, balance, stoop, kneel, crouch[,] and crawl occasionally. She can understand, remember, and carry out detailed but not complex tasks. She can relate on a superficial basis with coworkers and supervisors. She can attend to tasks for a sufficient period to complete tasks. [Plaintiff] can manage the stresses involved in detailed work-related tasks."

She has no past relevant work.

Step 5:     Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-14 at PageID 1423-39.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 1439-40.)

## B.     State Agency Psychological Consultants

State agency psychological consultant Kari Kennedy, Psy.D. completed a Disability Determination Explanation form in February 2021. (AR, Doc. No. 7-3 at PageID 118-21, 124-27.) Dr. Kennedy found mild impairment in the "B Criteria" areas of understanding, remembering, or applying information and adapting or managing oneself. (*Id.* at PageID 120.) She found no impairment in the area of interacting with others and moderate impairment in the area of concentrating, persisting, or maintaining pace. (*Id.*) In terms of functional limitations, Dr. Kennedy opined:

The evidence suggests that [Plaintiff] can understand, remember, and carry out detailed, but not complex tasks. [Plaintiff] can relate on a superficial

5

and ongoing basis with coworkers and supervisors. [Plaintiff] can attend to tasks for a sufficient period to complete tasks. [Plaintiff] can manage the stresses involved with detailed work-related tasks.

(*Id.* at PageID 127.) Donna Unversaw, Ph.D. reviewed the updated record at the reconsideration level in June 2021. (*Id.* at PageID 154-60.) Dr. Unversaw indicated that she affirmed Dr. Kennedy's February 2021 assessment. (*Id.*)

The ALJ concluded that the state agency psychological consultants' findings were "generally persuasive." (Decision, Doc. No. 7-14 at PageID 1437.) The ALJ reasoned that the consultants "supported their opinions with reference to the treatment records that showed [Plaintiff] displayed good eye contact, smiled at times, appropriate mood and affect, and normal attention, concentration, memory, and judgment. Exhibits 1A/14-15, 2A/14-15, 7A/7-8 & 8A/7-8." (*Id.*) The ALJ also reasoned that the consultants "referenced the report from [Plaintiff's] sister noting she was able to care for her child, prepare simple meals, do laundry, and shop, although with some physical limitations." (*Id.*) According to the ALJ: "This determination is generally consistent with and supported by the longitudinal record, including the testimony of [Plaintiff] at the hearings and the updated medical evidence of record." (*Id.*) The ALJ further explained:

For example, updated records showed she was able to spend time with her sister and discuss her wedding plans in detail in July 2021, practice karate with her daughter in August 2021, and successfully resolved her custody dispute in September 2021. Exhibits 23F/24, 49. Moreover, there appeared to be some break in treatment as she requested a referral for psychiatric care in December 2024. Exhibit 32F/7.

(*Id.*) The ALJ concluded that "[s]uch records are inconsistent with any further restrictions in the mental functioning domains." (*Id.*)

6

## IV.    LAW AND ANALYSIS

Plaintiff asserts just one error: "The ALJ failed to adequately account for the state agency mental health reviewing experts' opinion regarding [Plaintiff's] ability to interact with others." (SE, Doc. No. 9 at PageID 2089.) For the reasons discussed below, Plaintiff's assertion is not well-taken and the undersigned recommends that the ALJ's decision be affirmed.

### A.    Applicable Law

It is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s) ....” 20 C.F.R.

§ 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical

opinion and prior administrative medical finding by considering the following factors: (1)

supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and

(5) any other factor “that tend[s] to support or contradict a medical opinion or prior

administrative medical finding.” 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the “most important.”

20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that

“[t]he more relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s) ... the more

persuasive the medical opinions ... will be.” 20 C.F.R. § 404.1520c(c)(1). Therefore, an

ALJ’s supportability analysis addresses whether a medical professional has sufficient

justification for their *own* conclusions. *See Crystal E.J. v. Comm’r of Soc. Sec.*, No. 2:21-

CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord*

*Burke v. O’Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar.

20, 2024) (“Supportability addresses the extent to which a medical source or consultant

has articulated record evidence bolstering her own opinion or finding.”).

The consistency factor, by contrast, recognizes that “[t]he more consistent a

medical opinion(s) ... is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) ... will be.” 20 C.F.R.

§ 404.1520c(c)(2). The ALJ’s consistency analysis therefore must compare the medical

opinion at issue to evidence from “*other* medical and nonmedical sources.” *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r*

9

*of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023) (Jolson, M.J.)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

10

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning ... in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.    The ALJ's RFC Is Supported By Substantial Evidence.**

Plaintiff does not allege that the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520c when she evaluated the state agency psychological consultants' prior administrative medical findings. Instead, Plaintiff's sole assertion is that the ALJ erred because she "included one of [the consultants'] limitations verbatim despite that limitation not being vocationally defined." (SE, Doc. No. 9 at PageID 2089.) Plaintiff argues that "'superficial' is a term that has not been defined by Social Security or any of its associated publications nor by this Court," and so "[i]t was impossible to know what the ALJ meant when the ALJ limited [Plaintiff] to 'superficial' interaction." (*Id.*; Reply, Doc. No. 13 at PageID 2110.) According to Plaintiff, "the ALJ included in the residual functional capacity a limitation that could not be interpreted," and  "[t]he ALJ's failure to define the term leaves the residual functional capacity unreviewable." (SE, Doc. No. 9 at PageID 2089.) For the reasons discussed below, Plaintiff's alleged error is without merit.

Defendant cites to an unreported decision by the United States Court of Appeals for the Sixth Circuit to support its assertion that the ALJ did not err by limiting Plaintiff

11

to superficial interactions with coworkers and supervisors, without specifically defining "superficial." (Mem. In Opp., Doc. No. 11 at PageID 2098 (citing *Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *4 (6th Cir. June 20, 2023) (internal quotations and citations omitted).) While the Court is not bound by an unreported Sixth Circuit case, the undersigned finds the reasoning in that decision to be persuasive. *See Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011). The plaintiff in *Preston* argued that the ALJ erred by using the term "superficial" and that the ALJ "should have better explained what was meant by that term." 2023 WL 4080104, at *4. The *Preston* court rejected that argument, finding that "the record evidence supported the view that [the plaintiff's] mental capabilities during the relevant period allowed him to perform modest tasks with limited interactions with colleagues, providing a basis for the use of the word 'superficial' in the RFC." *Id.* The court also noted that "the ALJ's use of the term 'superficial' parrots a report of one of the psychologists who assessed [the plaintiff]." *Id.* The court concluded that the ALJ did not err by using "the term 'superficial,' a 'well-recognized work-related limitation.'" *Id.*

Applying the Sixth Circuit's reasoning in *Preston*, the undersigned finds that the ALJ in this case did not err by using "superficial" in the RFC. First, substantial evidence provides a basis for the ALJ's use of the term "superficial." *See* 2023 WL 4080104, at *2, *4. The ALJ acknowledged many of Plaintiff's subjective complaints, which included anxiety, limitations with memory and concentration, difficulty completing tasks and managing stressful situations, difficulty getting along with others, social isolation, and reports of difficulties completing daily activities such as cooking, completing household

chores, driving long distances, and shopping. (Decision, Doc. No. 7-14 at PageID 1427-36.) The ALJ summarized the medical records that documented Plaintiff's treatment for her mental impairments. (*Id.* at PageID 1434-35.) She acknowledged Plaintiff's subjective complaints to providers of insomnia, PTSD, and trauma history, and she acknowledged that providers prescribed psychotropic medications for diagnoses including PTSD, major depressive disorder, and an unspecified mood disorder. (*Id.* at PageID 1434.)

The ALJ compared this evidence to the mental status examinations in the treatment records, which generally showed a normal mood, memory, affect, behavior, and judgment, as well as good eye contact. (Decision, Doc. No. 7-14 at PageID 1434-36.) In terms of Plaintiff's social abilities and limitations, the ALJ emphasized that although Plaintiff reported spending very little time with others and sometimes having "problems" with others, she reported going to her sister's house regularly and stated that she got along "great" with authority figures. (*Id.* at PageID 1435-36.) The ALJ also noted that the record showed "no objective evidence of problems getting along with others during prior employment" and that Plaintiff "consistently interacted well with her clinicians, who generally noted that [Plaintiff's] behavior was normal." (*Id.* at PageID 1436.)

The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 7-14 at PageID 1427, 1436.) She concluded that the RFC would account for Plaintiff's mental impairments by limiting Plaintiff to a range of detailed—but not complex—tasks. (*Id.* at PageID 1426, 1435-36). Significantly, the ALJ concluded that Plaintiff was not restricted in her ability to maintain social

13

functioning but nevertheless limited Plaintiff to superficial interactions with coworkers and supervisors. (*Id.*) The undersigned concludes that the ALJ's findings regarding Plaintiff's social functioning, and resulting RFC, are supported by substantial evidence.

Second, just like the ALJ in *Preston*, this ALJ's use of the term "superficial" mirrors the reports of psychologists who assessed Plaintiff's mental functioning. As noted, the state agency psychological consultants opined that Plaintiff was limited to interacting with coworkers and supervisors "on a superficial and ongoing basis." (AR, Doc. No. 7-3 at PageID 127, 159.) The ALJ agreed with this limitation, reasoning that all of the consultants' findings were supported by "reference to the treatment records" and "consistent with and supported by the longitudinal record." (Decision, Doc. No. 7-14 at PageID 1437.) In the RFC, the ALJ limited Plaintiff to "relat[ing] on a superficial basis with coworkers and supervisors." (*Id.* at PageID 1426.) The undersigned concludes that the ALJ followed the requirements of 20 C.F.R. § 404.1520c when she evaluated the state agency psychological consultants' prior administrative medical findings.[5] Additionally, the undersigned concludes that the ALJ adequately explained why she adopted the superficial interaction limitation in the RFC. *See Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 23150, at *24 (S.D. Ohio Feb. 9, 2023) (Litkovitz, M.J.) ("The issue is whether the ALJ explained the basis for the RFC determination."), *report and recommendation adopted*, No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 54657

---

[5] As stated, Plaintiff does not allege that the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520c when she evaluated the state agency psychological consultants' prior administrative medical findings.

(S.D. Ohio Mar. 29, 2023) (Graham, D.J.) (citation omitted). The ALJ's conclusions are supported by substantial evidence, and the applicable legal framework did not require her to do more.

Plaintiff does not attempt to distinguish *Preston*. (Reply, Doc. No. 13 at PageID 2110.) Instead, Plaintiff cites two cases from this district and asserts that those courts "classified the term 'superficial' as a term without any definition – a non-vocationally relevant term." (*Id.* (citing *Paul S. v. Comm'r of Soc. Sec.*, No. 2:22-cv-4090, 2023 WL 6389428, at *4 (S.D. Ohio Oct. 2, 2023) (Litkovitz, M.J.), *report and recommendation adopted*, No. 2:22-cv-4090, 2023 WL 7002734 (S.D. Ohio Oct. 24, 2023) (Morrison, D.J.); *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020) (Preston Deavers, M.J.), *report and recommendation adopted*, No. 2:19-cv-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (Graham, D.J.).) *Dickinson* and *Paul S.*, however, are distinguishable.

As an initial matter, the *Dickinson* court issued its decision prior to the Sixth Circuit's decision in *Preston*. 2020 WL 4333296, at *1. Further, the ALJ in that case did not adopt verbatim the state agency psychological consultants' limitation for "superficial" interaction with coworkers and supervisors. 2020 WL 4333296, at *11. Instead, the ALJ limited the plaintiff to "occasional interaction with others with no tandem task and no customer service responsibilities." *Id.* The ALJ supported his decision by explaining that superficial "is not a vocationally relevant term." *Id.* However the issue in *Dickinson* was not whether the ALJ's reasoning (that superficial is not "vocationally relevant") was correct, but whether the ALJ's RFC limitations addressed the consultants' opined

15

limitation about the quality of social contacts. *Id.* at *12. Here, by contrast, the ALJ adopted the consultants' social limitation, and so the ALJ unquestionably accounted for the consultants' findings.

*Paul S.* is also distinguishable from the case at hand. Unlike the ALJ In this case, the ALJ in *Paul S.* defined the term "superficial." 2023 WL 6389428, at *4. The court recognized that "it **may** fall to the ALJ to convert and incorporate the limitations set forth in a medical opinion into vocationally relevant terms." *Id.* (emphasis added) (cleaned up) (citation omitted). Yet the issue in *Paul S.* was not whether the ALJ was required to define the term, but "whether the ALJ's failure to explain how he arrived at his definition of 'superficial' interaction" constitutes reversible error. *Id.* at *5. Significantly, the *Paul S.* court determined that "although the ALJ did not explain how he arrived at his definition of superficial," the ALJ did not err because the ALJ "adequately explained the basis for his RFC." *Id.* at *6-7. The court further noted: "The ALJ's discussion of the medical record and, in particular, the opinions of the state agency psychologists, substantially support the ALJ's definition of 'superficial' enabling this Court to meaningfully review the decision." *Id.* at *7. *Preston* makes it clear that an ALJ is not **required** to convert a limitation for "superficial interactions" into more vocationally-relevant language—because the term itself is "a well-recognized work limitation." 2023 WL 4080104, at *4 (internal quotations and citations omitted). Nevertheless, the ALJ's RFC in this case does not run afoul of *Paul S.* because the ALJ explained why she limited Plaintiff to superficial social interactions. The ALJ's explanation is sufficiently detailed for the undersigned to engage in a meaningful review of the ALJ's decision and

16

conclude, for the reasons discussed above, that her findings about Plaintiff's social functioning are supported by substantial evidence.

In sum, the undersigned finds that the ALJ's conclusions are supported by substantial evidence, and the ALJ did not err by including a limitation for superficial interactions in the RFC. The ALJ's decision should therefore be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1.      Plaintiff's Statement of Errors (Doc. No. 9) be OVERRULED;

2.      The Court AFFIRM the Commissioner's non-disability determination; and

3.      The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**DEADLINE TO FILE OBJECTIONS**

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).